**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

SHEET METAL WORKERS : 
LOCAL 27 HEALTH & WELFARE : 
FUND, :

               Plaintiff, :

               v. :

ESTATE OF KEITH BEENICK, :

               Defendant. :
_____:

    Civil Action No.: 08-CV-00346 (FLW)

          **OPINION**

**WOLFSON, United States District Judge,**

    Plaintiff Sheet Metal Workers Local 27 Health & Welfare Fund ("Plaintiff" or "Fund"), by way of a Motion for Summary Judgment, seeks a Declaratory Judgment for an equitable lien enforcing certain provisions of an agreement with Defendant, Estate of Keith Beenick ("Defendant" or "Estate").  Defendant has filed a Cross-Motion for Summary Judgment opposing such enforcement.  In addition, Plaintiff has moved to dismiss Defendant's Counterclaim for discovery. For the reasons stated herein, Plaintiff's motion to dismiss the Counterclaim is granted, its motion for summary judgment on the Complaint is granted in part and denied in part, and Defendant's motion is granted in part and denied in part.

### I.  Facts

    The Fund is a self-insured, multi-employer employee benefit welfare plan as defined in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(1), (3), and (37).  (Pl. Statement of Facts ¶¶ 1-2.)  The Fund was established via an Agreement and Declaration of Trust

("Trust Agreement") and is governed by a Board of Trustees ("Trustees"). (Id. at ¶ 3.) The purpose of the Fund is to provide "health and welfare benefits for the Participants in accordance with a Health and Welfare Plan ("Plan") which shall be adopted by the Trustees and which may from time to time, hereafter be amended or otherwise supplemented." (Id. at ¶ 4.) In accord with Article III, §1 of the Trust Agreement, the Trustees have, from time to time, adopted a Summary Plan Description ("SPD") to apprise the Fund's participants of information pertinent to their participation in the Fund. (Id. at ¶ 5.)

Keith Beenick ("Beenick" or "Decedent") was a participant in the Fund. (Id. at ¶ 10.) When Decedent suffered injuries allegedly as a result of medical malpractice by a third-party, the Fund paid benefits[1] on Decedent's behalf, in accord with the SPD in effect at the time ("1995-2006 SPD").[2] (Id. at ¶ 12.) The 1995-2006 SPD, which was in effect from January 1, 1995 through December 21, 2006, provided:

> As a condition to payment of benefits under this plan for expenses incurred by a covered person due to injury or illness for which a third party may be liable:
>
> The Plan shall, to the extent of benefits it has paid, be subrogated to (has the right to pursue) all rights of recovery of covered persons against: such third party; . . .
>
> The Plan shall have the right to recover from the covered person amounts received by judgment, settlement, or otherwise from: Such third party or his or her insurance carrier . . .

---

[1] Plaintiff alleges that it has paid $458,683.70 in claims on behalf of Defendant. (Id. at ¶ 12.) Defendant disputes this amount, claiming that only $402,916.35 has been paid by Plaintiff. As the amount paid is not a fact material to the validity of Plaintiff's lien, this factual dispute does not preclude summary judgment, and will not be discussed at this time.

[2] Defendant alleges it is currently in the process of settling this suit; this opinion is intended in no way to affect that state court proceeding.

2

(Def. Br. Ex. T.); (Pl. Facts ¶ 7.)  Decedent's injuries ultimately resulted in his death on August 23, 2004.  (Pl. Facts ¶ 10.)

Subsequent to the death of Decedent, the Trustees adopted an updated version of the Plan's summary plan description ("2007 SPD"), which became effective on January 1, 2007.  (Id. at ¶ 6.) The 2007 SPD contains a section entitled "In the Case of Subrogation (Reimbursement)."  (Id.)  The subrogation provision of the 2007 SPD specifically provides as follows:

> Benefits payable by the Fund for the treatment of an illness or injury shall be limited . . . when the illness or injury is the result of an act or omission of another . . . and when the participant or dependent pursues or has the right to pursue a recovery for such act or omission . . . By accepting benefits related to such an illness or injury you agree: that the Fund has established a lien on any recovery received by you (or your dependent, legal representative, or agent . . .).

(Id.)

On July 6, 2006, Bruce Matthews, Esq., attorney for Defendant, notified Plaintiff by mail that he was representing Decedent's Parents in their claims for injuries sustained by Decedent.  (Id. at ¶ 10.)  Upon receipt of this letter, Plaintiff learned that a third-party medical malpractice claim existed with respect to the injuries sustained by Decedent and for which the Fund had paid benefits under the Plan on Decedent's behalf.  (Id. at ¶ 11.)  Defendant's counsel made several requests for information from the Fund over the ensuing year, however, Defendant only contacted Mr. Ragno, the Plan Administrator ("Plan Administrator"), once on July 6, 2006 to request in writing a copy of Decedent's "insurance coverage and/or Plan Summary from November 2001 to August 2004." (Def. Cert. 2.)  On May 11, 2007, Defendant's counsel was put on notice that Plaintiff was asserting a subrogation lien.  (Pl. Facts ¶ 13.)  On June 4, 2007, Plaintiff provided Defendant with additional information and documentation pertaining to the subrogation lien and asked Defendant to confirm,

3

in writing, that Plaintiff's lien would be honored.  (Id. at ¶ 14.)  On July 6, 2007, while Defendant requested additional information, it did not recognize Plaintiff's subrogation lien.  (Id. at ¶ 15.)  On July 9, 2007, Plaintiff advised Defendant of its position regarding the recognition of its lien claim and threatened litigation if the matter was not resolved.  (Id. at ¶ 16.)  On July 31, 2007, Plaintiff provided Defendant with additional documentation related to the calculation of Plaintiff's subrogation lien.

**II.  Procedural History**

On January 17, 2008, Plaintiff filed an action for Declaratory Judgment on the validity of its subrogation lien.  On March 28, 2008, Defendant filed an Answer and Counterclaim against Plaintiff.  Defendant's Counterclaim alleges that Plaintiff has refused to furnish Defendant with information to which Defendant is entitled under 29 U.S.C. §§ 1024 (b)(4), 1132, and is necessary for Defendant to determine the validity of Plaintiff's lien.  On May 1, 2008, Plaintiff filed a Motion to Dismiss Defendant's Counterclaim.  See Part VI, infra.  On August 8, 2008, Plaintiff filed a Motion for Summary Judgment.  On September 5, 2008, Defendant opposed Plaintiff's motion and filed its own Motion for Summary Judgment.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  Further, "ERISA specifically provides that a federal district court has exclusive jurisdiction over civil actions brought under 29 U.S.C. § 1132(a)(3) by the Secretary, participant, beneficiary or fiduciary of an ERISA plan to enforce the terms of the plan.  See 29 U.S.C. § 1132(e)."  Walker v. Rose, 22 F. Supp. 2d 343, 346 (D.N.J. 1998) (citations omitted).

4

### III.  Standard of Review

Summary judgment is appropriate where the Court is satisfied "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.  The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment.  Celotex, 477 U.S. at 330.  Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.  In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999).  A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party.  Anderson, 477 U.S. at 248.  In evaluating the evidence, a court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [non-moving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (citations omitted).

### IV.  Discussion

Plaintiff seeks a Declaratory Judgment to enforce the "unambiguous subrogation provision" of its SPD[3] so it may "obtain . . . appropriate equitable relief" under ERISA, 29 U.S.C. § 1132(a)(3)(B).  The ERISA statute provides that "[a] fiduciary may bring a civil action under § 502(a)(3) of ERISA '(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.'"

---

[3]        The Trust Agreement itself is silent on the issue of subrogation, and neither party has furnished the Court with a copy of the Plan, nor has any party presented to the Court the Plan's language regarding the issue of subrogation.  Instead, the Fund relied on the subrogation language as it appears in versions of the SPD.  Since the parties assert their rights pursuant to the language in the SPD, this Court will substitute the SPD for the Plan throughout this opinion.  Cf. Burstein v. Ret. Account Plan for Emples. of Allegheny Health Educ. & Research Found., 334 F.3d 365, 378 (3d Cir. 2003) (holding that "where a summary plan description conflicts with the plan language, it is the summary plan description that will control").  Plaintiff concedes that the 1995-2006 SPD was in effect at the time of Decedent's death and describes the 2007 SPD as providing "significant explanation with respect to the Fund's right to reimbursement/subrogation."  (Pl. Br. 6 n. 1.) Plaintiff's attempt to characterize the current, updated 2007 SPD as merely providing "significant explanation" of the subrogation rights delineated in the 1995-2006 SPD is not persuasive; this Court must give the language of the 1995-2006 SPD its "intended effect."   See Silcott, 1998 U.S. Dist. LEXIS 11338 at *10-11 (quoting Ryan, 78 F.3d at 127) ("Where a plan contains a subrogation clause, a court must give the clause its intended effect.  If the ERISA plan plainly and unambiguously requires complete reimbursement for all benefits paid, the plan does not 'conflict with the statutory policies of ERISA' and must be enforced."); see also Shank, 500 F.3d at 838 ("Ordinarily, courts are to enforce the plain language of an ERISA plan in accordance with its literal and natural meaning.") (internal quotations and citations omitted).

Plaintiff concedes that "[t]he current [2007] SPD expanded the Fund's subrogation rights" to disclaim the make-whole doctrine.  (Pl. Br. 6 n. 1.) (emphasis added).  By implication, whether by stating that the 2007 SPD expands or explains the 1995-2006 SPD, Plaintiff is effectively admitting that the language of the 1995-2006 SPD is open to interpretation, and thus, ambiguous; and as a result, Plaintiff has updated the language of its 2007 SPD to include language that has been deemed unambiguous in Third Circuit case law.  In so doing, the Fund has explained and expanded the rights it has under the Plan.  Id.  However, this Court need not rely on the Fund's newly minted SPD language to ascertain whether it has allowed and indeed, broadened the Fund's right of subrogation, but rather look to the  language contained in the four corners of the 1995-2006 SPD to determine whether it is unambiguous.  See Part IV(A)(i), infra.

Sereboff v. Mid Atl. Med. Servs., 547 U.S. 356, 361 (2006) (quoting 29 U.S.C. § 1132(a)(3)).  In response, Defendant has filed a Cross-Motion for Summary Judgment seeking either (1) that Plaintiff's subrogation provision should be declared void as a matter of public policy;[4] or (2) that the remedy Plaintiff seeks is not "appropriate" because it would result in Plaintiff's unjust enrichment and that any lien should not be enforced without a pro-rata reduction for the attorney's fees spent in creating the recovery against which Plaintiff's lien is being asserted.  Further, Defendant contends that, should the Court grant Plaintiff an equitable lien without a pro-rata reduction, that lien cannot apply to any recovery received by the Parents of Decedent ("Parents") in their individual capacities as they are not "Covered Persons" under the terms of the contract, received no benefits from Plaintiff, and lack privity of contract with Plaintiff.  Defendant also challenges Plaintiff's entitlement to attorney's fees and costs in this matter.  The inquiry for this Court is: (i) whether the subrogation provision is unambiguous and thus enforceable or if it is ambiguous and therefore subject to the application of federal common law (i.e. a pro-rata reduction); (ii) whether the subrogation provision extends to any of the Parent's recovery; and (iii) whether Plaintiff is entitled to attorney's fees in this case.  The Court will address each of these issues in turn below.

---

[4]      Defendant argues that public policy would not condone the result whereby Decedent could hire an attorney to litigate the underlying action and then that attorney would be unable to recover anything while Plaintiff is fully reimbursed.  (Def. Br. 4); cf. Silcott v. Wal-Mart Stores Assocs. Health & Welfare Plan, No. 97-7044, 1998 U.S. Dist. LEXIS 11338, at *15 (E.D. Pa. July 24, 1998).  Because the result Defendant seeks is achieved by application of the common-fund doctrine, discussed below, this argument is moot.  See Part IV(A)(ii), infra.

**A.  Enforcement of the Subrogation Provision Subject to a <u>Pro-Rata</u> Reduction**

Defendant, relying on a footnote in <u>Sereboff</u>,[5] argues that a full reimbursement to Plaintiff

without a <u>pro-rata</u> reduction for attorney's fees for the creation of the settlement fund is not

"appropriate" within the meaning of § 502 (a)(3)(B) of ERISA because it would result in Plaintiff's

unjust enrichment.[6]  <u>See</u> <u>Sereboff</u>, 547 U.S. at 368 n. 2.  Defendant suggests that the application of

a doctrine of federal common law is appropriate and devotes most of its short brief to defining legal

terms and raising rhetorical questions about justice rather than engaging in the analysis necessary to

---

[5]     In that footnote, the Supreme Court noted that the plan beneficiaries' argument that, "even if the relief [] sought [by the fund claiming a subrogation lien] was 'equitable' under § 502(a)(3), it was not 'appropriate' under that provision in that it contravened principles like the make-whole doctrine." <u>Sereboff</u>, 547 U.S. at 368 n. 2.  However, the Court declined to consider whether the lien was "not 'appropriate' apart from the contention that it was not 'equitable'" because this issue was not raised in the courts below.  Consequently, the Court declined to consider the appropriateness of various equitable defenses.  <u>Id.</u>  On the other hand, Defendant here has raised equitable defenses, and as such – where not precluded by the express terms of the plan – they will be considered.  <u>See</u> <u>Fotta v. Trustees of the UMW Health & Ret. Fund of 1974</u>, 165 F.3d 209, 214 (3d Cir. 1998) ("Because the remedy we recognize here is equitable in nature, its award involves an exercise of judicial discretion.  And, like other equitable remedies, it is subject to equitable defenses.").

[6]     In a short and confused argument, Defendant raises a three-part test for whether relief sounds in equity, misquotes and misattributes that test as set forth by the Supreme Court in <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204 (2002), and then intertwines this challenge with the argument that the relief is not appropriate.  (Def. Br. 6.)  By invoking this three-part test, Defendant actually is challenging whether the relief Plaintiff seeks sounds in equity; Defendant conflates the argument that the relief Plaintiff seeks is not equitable (that is, sounding in equity as opposed to law) with the argument that the funds Plaintiff seeks to assert a lien against do not belong in good conscience to Plaintiff because such a result would not be equitable (that is, fair).  This Court need not entertain Defendant's mistaken challenge to whether the relief Plaintiff seeks sounds in equity, as a fiduciary's action to enforce a subrogation claim is equitable if "it is indistinguishable from an action to enforce an equitable lien established by agreement."  <u>Sereboff</u>, 547 U.S. at 368.  Where a plaintiff brings suit pursuant to ERISA to enforce a subrogation provision of a plan, and the complaint seeks enforcement of the provision as opposed to seeking money damages, the remedy sought is "restitutionary in nature [and] plaintiffs' action is properly brought pursuant to 29 U.S.C. § 1132(a)(3)."  <u>Walker</u>, 22 F. Supp. 2d at 349-50.  Accordingly, since it is clear Plaintiff does not seek money damages, but rather enforcement of the subrogation provision, the relief Plaintiff seeks sounds in equity.

determine whether application of federal common law is appropriate – an analysis necessary to determining whether to grant the <u>pro-rata</u> reduction per Defendant's request.

"It is well established that federal courts have the power under appropriate circumstances to apply common-law doctrines in ERISA actions." <u>Ryan by Capria-Ryan v. Fed. Express Corp.</u>, 78 F.3d 123, 126 (3d Cir. 1996). The Third Circuit has held that when "deciding whether it is appropriate to apply principles of federal common law, 'the inquiry is whether the judicial creation of a right . . . is necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress.'" <u>Id.</u> (quoting <u>Plucinski v. I.A.M. Nat'l Pension Fund</u>, 875 F.2d 1052, 1056 (3d Cir. 1989)). However, the Third Circuit has "admonished district courts that they 'should not easily fashion additional ERISA claims and parties outside congressional intent under the guise of federal common law.'" <u>Ryan</u>, 78 F.3d at 126 (quoting <u>Curcio v. John Hancock Mut. Life Ins. Co.</u>, 33 F.3d 226, 235 (3d Cir. 1994)). Thus, to apply federal common law, it is necessary that either (1) the plan does not address the issue of subrogation, or (2) that the subrogation provision contains ambiguous language as it relates to the issue at bar and application of federal common law is necessary (i) to effectuate Congress's purpose in enacting ERISA or (ii) to fill in a gap in the plan. <u>See Ryan</u>, 78 F.3d at 126. The parties here do not dispute that the 1995-2006 SPD contains a subrogation provision, and therefore, this Court's analysis will focus on the latter inquiry.

When considering the meaning of "appropriate" equitable relief, the Supreme Court has directed district courts to "keep in mind the special nature and purpose of employee benefit plans." <u>Admin. Comm. of the Wal-Mart Stores, Inc. v. Shank</u>, 500 F.3d 834, 838 (8th Cir. 2007) (quoting <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 515 (1996)) (internal quotations omitted). The Third Circuit has directed that "while ERISA was enacted to provide security in employee benefits, it protects only

those benefits provided in the plan. . . . 'ERISA mandates no minimum substantive content for employee welfare benefit plans, and therefore a court has no authority to draft the substantive content in such plans.'" Ryan, 78 F.3d at 126 (quoting Hamilton v. Air Jamaica, Ltd., 945 F.2d 74, 78 (3d Cir. 1991), cert. denied, 503 U.S. 938 (1992)); see also Walker, 22 F. Supp. 2d at 347.   "[W]hile ERISA is designed to protect the interests of plan participants and beneficiaries, those interests are specified by the written plan.  ERISA's 'repeatedly emphasized purpose [is] to protect contractually defined benefits.'"  Shank, 500 F.3d at 838-39 (quoting Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985)) (emphasis in original).

ERISA requires that all employee benefit plans be "established and maintained pursuant to a written instrument."  29 U.S.C. § 1102(a)(1).  ERISA, however, "neither requires a welfare plan to contain a subrogation clause nor does it bar such clauses or otherwise regulate their content." Ryan, 78 F.3d at 127.  This lack of content regulation is particularly relevant to the present dispute because "ERISA is silent on whether a plan containing a subrogation clause must allow for attorney's fees if an attorney achieved the recovery on which the subrogation lien is imposed." Silcott, 1998 U.S. Dist. LEXIS 11338 at *10.  "Where a plan contains a subrogation clause, a court must give the clause its intended effect.  If the ERISA plan plainly and unambiguously requires complete reimbursement for all benefits paid, the plan does not 'conflict with the statutory policies of ERISA' and must be enforced."  Silcott, 1998 U.S. Dist. LEXIS 11338 at *10 (citing Ryan, 78 F.3d at 127).

Plaintiff points this Court to the Third Circuit's holding in Bollman Hat Co. v. Root, 112 F.3d 113 (3d Cir. 1997), following its decision in Ryan, which rejected the notion of applying the common law principle of unjust enrichment to ERISA plans seeking to enforce unambiguous

10

subrogation rights.  However, Plaintiff fails to take into account that the application of federal common law is "entirely without merit" only where the ERISA plan contains an <u>unambiguous</u> subrogation provision requiring <u>full reimbursement</u> and the unjust enrichment defense would be contrary to the express terms of the plan.  <u>See Ryan</u>, 78 F.3d at 127-28.  "Enrichment is not unjust where it is allowed by the express terms of the . . . plan." <u>Id.</u> at 127 (citations and internal quotations omitted).  Taking into consideration the Third Circuit's mandate in <u>Ryan</u> that, in the presence of clear and unambiguous language, a court is compelled to enforce the terms of the plan, the court in <u>Wal-Mart Stores Assocs. Health & Welfare Plan v. Bond</u> noted a necessary implication of the <u>Ryan</u> rule:

> The <u>Ryan</u> court refused to employ the common law doctrine of unjust enrichment to require employers to absorb a <u>pro-rata</u> share of attorney's fees in the presence of language in the ERISA plan squarely foreclosing such a possibility.  <u>Ryan</u>, 78 F.3d at 126 ("resort to federal common law generally is inappropriate when its application would . . . threaten to override the explicit terms of an established ERISA benefit plan") (quoting <u>Singer v. Black & Decker Corp.</u>, 964 F.2d 1449, 1452 (4th Cir. 1992)).  <u>This invites the obverse inference: in the absence of preclusive language in the ERISA Plan or the SPD, a court may apply an unjust enrichment analysis.</u>

<u>Bond</u>, No. 96-7522, 1997 U.S. Dist. LEXIS 6358, at *10 (E.D. Pa. May 7, 1997) (emphasis added). Thus, where the language of a plan's subrogation clause is unambiguous, a court is not permitted to apply federal common law doctrines.  <u>See Id.</u>; <u>see also</u> <u>Walker</u>, 22 F. Supp. 2d at 351 (citing <u>Ryan</u>, 78 F.3d at 126) ("As the language of the Plan is clear, this Court will not apply a common law rule of interpretation which is contrary to the terms of the plan.").  However, where the language of a plan, or here, SPD, is ambiguous, a court may employ federal common law to provide <u>appropriate</u> equitable relief.  <u>See Bond</u>, 1997 U.S. Dist. LEXIS 6358 at *10.

### i.  Ambiguity Analysis of SPD Language

The key issue, then, is whether the 1995-2006 SPD is unambiguous and "by [its] express terms, foreclose[s] the equitable apportioning of attorney's fees." Id. at *9.  In Bond, the court held that an "ERISA plan participant whose third party recovery is subrogated to the plan may not withhold attorney's fees where the plan unambiguously requires full reimbursement."  Id. at *7 (citing Ryan, 78 F.3d at 124) (emphasis added).  The Bond court noted that the fact that the "subrogation provision at issue was unequivocal as it related to the extent of reimbursement" was "[c]ritical to the [Third Circuit's] holding" in Ryan.  Id. at *7-8.  Thus, if the language of the 1995-2006 SPD is ambiguous as to the extent of Plaintiff's reimbursement, then the determination of the propriety of providing a pro-rata reduction for attorney's fees incurred by Defendant in the creation of the recovery to which Plaintiff seeks to attach its subrogation lien "is to be decided by the application of federal common law." Id. at *5; see also Ryan, 78 F.3d at 125; Bollman, 112 F.3d at 114.

Because "ERISA neither requires a welfare plan to contain a subrogation clause nor does it bar such clauses or otherwise regulate their content," the determination of whether application of federal common law is proper requires examination of the pertinent language of the plan, or here, SPD, to determine whether or not it is ambiguous.  Ryan, 78 F.3d at 127.  When analyzing whether language in an ERISA plan is ambiguous, the Third Circuit and this District have directed that "notwithstanding the ennobling purposes which prompted passage of ERISA, courts have no right to torture language in an attempt to force particular results . . . the contracting parties never intended or imagined.  To the exact contrary, straightforward language . . . should be given its natural meaning." Walker, 22 F. Supp. 2d at 347-48 (citing Ryan, 78 F.3d at 126).  Whether an ERISA

plan's language is ambiguous is a question of law.  See In re Unisys Corp. Long-Term Disability Plan ERISA Litig., 97 F.3d 710, 715 (3d Cir. 1996).

This Court must analyze whether, by the express terms of the 1995-2006 SPD, Plaintiff must be fully reimbursed before Defendant's attorney may receive his share of attorney's fees from the underlying action against the third-party.[7]  Although the 1995-2006 SPD does not expressly speak to attorney's fees, the "plan or agreement need not specifically address attorney's fees in order to unambiguously require full reimbursement."  Silcott, 1998 U.S. Dist. LEXIS 11338 at *14 (citing Bollman, 112 F.3d at 117).

Plaintiff asserts in conclusory fashion that the subrogation clause of the 1995-2006 SPD is unambiguous, and as such, warrants enforcement.  (Pl. Br. 8-9.)  Plaintiff, however, like Defendant, fails to provide the necessary analysis as to whether the subrogation provision of the 1995-2006 SPD

---

[7]      The court in Silcott reviewed Third Circuit precedent on the issue of ambiguity of subrogation clauses in ERISA plans when deciding whether the SPD language at issue in that case was ambiguous:

In Ryan, the ERISA plan required "100% reimbursement for any plan benefits paid." Ryan, 78 F.3d at 125.  The court held the language was unambiguous and required complete reimbursement of all benefits paid, without a deduction for attorney's fees. The court determined, because the plan was clear, there was no unjust enrichment or windfall for the employer by completely reimbursing it even though the plaintiff's own attorney had borne the burden and expense of obtaining the funds from the third-party.  See Id. at 127-28.

In Bollman Hat Co., the ERISA plan mandated reimbursement "up to the amount of such benefits paid" of "any payments" made under the plan.  Bollman Hat Co., 112 F.3d at 114.  The court held that a "plan or agreement need not specifically address attorney's fees in order to unambiguously require full reimbursement."  Id. at 117. The court held there was "no distinction" between that language and the Ryan plan language; the subrogation clauses were "materially identical," and plaintiff had no right to deduct his attorney's fees from the amount due his employer under the plan. Id.

1998 U.S. Dist. LEXIS 11338 at *12-13.

13

is unambiguous. Plaintiff points this Court to Judge Brown's holding in <u>Walker</u>, in which the ERISA plan language under consideration was held to be unambiguous and thus, common law doctrines were correctly denied application because they would be contrary to the clear language of the plan. <u>See Walker</u>, 22 F. Supp. 2d 343. Although the plan considered in <u>Walker</u> and that present in the instant dispute bear a striking resemblance in the structure of their subrogation clauses, the presence of unambiguous modifying language is not the same in the second part of each subrogation clause – the relevant provision – and thus, the result differs, as well.[8]

Both the 1995-2006 SPD and the plan examined in <u>Walker</u> contain two-part subrogation clauses. In each plan's first part, the Fund is provided the right to take over and pursue the rights of covered persons for claims against a third-party on which the funds have paid benefits. <u>See Id.</u> at 348; (Def. Br. Ex. U.) The SPD here and the plan in <u>Walker</u> also contain a second part, which grants the funds the right to recover from settlements, judgments, and other recoveries that the covered persons receive from third-parties for claims on which the funds have paid benefits. <u>See Walker</u>, 22 F. Supp. 2d at 348; (Def. Br. Ex. U.)

In <u>Walker</u>, the second part of the subrogation clause provided to the fund the right, upon the payment of benefits, to "(2) recover from the Covered Person or his or her legal representative <u>any</u> benefits paid under the Booklet from payment which the Covered Person is entitled to receive from the third party . . ."; further, the plan also provided the company with "a <u>first</u> lien upon <u>any recovery</u>, whether by settlement, judgment, mediation or arbitration, that the Covered Person receive[d]." 22

---

[8]   Plaintiff does not dispute that the first part of the 1995-2006 SPD's subrogation clause is inapplicable, since the provision only entitles Plaintiff to pursue all rights of recovery of covered persons against third parties to the extent of benefits it has paid and Plaintiff did not pursue all of its rights of recovery here. Instead, Defendant retained its own counsel to pursue its claims against the third-party.

F. Supp. 2d at 348 (emphasis added).[10]  The <u>Walker</u> court focused on this part of the subrogation clause as controlling and found that this language was "unambiguous, and the provision's reference to 'any recovery' overrides the make whole rule."  <u>Id.</u> at 352.

In contrast, the second part of the 1995-2006 SPD states that "[t]he Plan shall have the right to recover from the covered person amounts received by judgment, settlement, or otherwise." (Compl. ¶ 9.)  Comparing the presence of unambiguous language modifying the applicable recovery provision examined in <u>Walker</u> with the lack of such language modifying the applicable recovery provision of the 1995-2006 SPD, it is clear there is a marked difference.  <u>Id.</u> at 348.  The relevant second part of the plan in <u>Walker</u> "clearly provide[d] that plaintiffs have 'a first lien upon any recovery' that defendants receive from a third-party."  <u>Id.</u> at 351.  The <u>Walker</u> court found that:

> When read in context and viewed in light of all of the circumstances, this language can only mean that the Plan is entitled to be reimbursed by defendants for amounts the defendants receive from a third-party.  Thus, under the unambiguous terms of the Plan, plaintiffs are entitled a full first-lien reimbursement of the . . . settlement in the state court action.

<u>Id.</u>  Unlike the subrogation clause analyzed in the <u>Walker</u> decision, the second part of the 1995-2006 SPD subrogation provision does not state in unambiguous terms what "the right to recover from the covered persons" encompasses; it uses no modifying terms such as "all," "first lien," "any recovery," or "100% reimbursement."[11]  Because the 1995-2006 SPD does not unambiguously establish the Plan's right to 100% reimbursement, the Third Circuit's precedent in <u>Bollman</u> and <u>Ryan</u> warrants

---

[10]     This is substantially the same language that appears in the subrogation provision in <u>Sereboff</u>.  <u>See</u> 547 U.S. at 362.

[11]     These terms do not represent "magic" words that must be present, but rather are words drawn from precedent as unambiguous when modifying subrogation provisions in ERISA plans. The words themselves are not important; the crux is the effect of their modification on the contractually created subrogation rights, which this Court, when they are expressly defined, must enforce.

the application of federal common law to determine the propriety of apportioning attorney's fees. See Wal-Mart Stores v. Bond, No. 96-7522, 1997 U.S. Dist. LEXIS 8058, at *9 (E.D. Pa. June 3, 1997).

Further, the subrogation language at issue in this case is substantially similar to the subrogation language considered in Bond.  See 1997 U.S. Dist. LEXIS 6358 at *2.  The 1995-2006 SPD relevant language provides that "[a]s a condition to payment of benefits under this plan for expenses incurred by a covered person due to injury or illness for which a third party may be liable: The Plan shall have the right to recover from the covered person amounts received by judgment, settlement, or otherwise. . . ."  (Def. Br. Ex. T.); (Pl. Facts ¶ 7.)  In Bond, the SPD subrogation language provided the Plan with the right to "recover benefits previously paid by the Plan to the extent that medical expenses may be payable in any of the following: Any judgment, settlement, or any payment, made . . . by a person considered responsible for the condition giving rise to the medical expense or by their insurers."  1997 U.S. Dist. LEXIS 6358, at *2.

The Bond court focused on the lack of modifying language, and held that in the absence of such modifying language, the SPD only "establish[d] the Plan's general entitlement to be reimbursed, but fails to specify unambiguously the extent of the reimbursement."  Id. at *10. Similarly, the language of the 1995-2006 SPD merely established the Fund's general right "to recover from the covered person amounts received by judgment, settlement, or otherwise," but fails to specify unambiguously the extent of that right.  See Id.

Plaintiff also points out that in Ryan, the Third Circuit noted that it would be inequitable to allow a plan participant to "partake of the benefits of the Plan and then, after they had received a substantial settlement, invoke common law principles to establish a legal justification for their

16

refusal to satisfy their end of the bargain." 78 F.3d at 128. Plaintiff, however, invokes this precedent without first establishing that the language of the 1995-2006 SPD is unambiguous. In <u>Ryan</u>, the defendant's "end of the bargain" consisted of an unambiguous provision for "100% reimbursement for any plan benefits paid" regardless of whether the settlement in <u>Ryan</u> exceeded the lien that the plan was asserting. <u>Id.</u> at 125, 128. In the instant action, Defendant's third-party recovery may fall short of the benefits paid by Plaintiff, but this is not the potential inequity; the inequity would be to permit Plaintiff to allow its express subrogation rights, i.e., the right to pursue all rights of recovery, lie fallow as Defendant pursues its own action in state court, and then once a recovery is created, to "partake of the benefits" that are not expressly and unambiguous subrogated to Plaintiff without requiring Plaintiff to foot its own fair share of the bill.[12] In light of ambiguity in the 1995-2006 SPD, this Court is empowered by precedent to invoke federal common law to achieve an <u>appropriate</u> equitable outcome for all parties.

### ii. Application of Federal Common Law

Because this Court has determined, as a matter of law, that the language of the 1995-2006 SPD's subrogation provision is ambiguous, the issue of whether to enforce Plaintiff's subrogation lien for full reimbursement with a <u>pro-rata</u> reduction for attorney's fees for the creation of the recovery is to be determined by the application of federal common law. <u>See Bond</u>, 1997 U.S. Dist. LEXIS 8058 at *5 ("[I]n the absence of unambiguous language establishing an ERISA Plan's entitlement to 100% reimbursement, the question of apportioning counsel fees incurred by an employee in the creation of a fund from which the employer also benefits is to be decided by the

---

[12] Further, "the beneficiaries have no ability to negotiate whatsoever. Plan providers have sole control of the terms of the plan whether fair or unfair." <u>Silcott</u>, 1998 U.S. Dist. LEXIS 11338 at *15.

application of federal common law.").

Defendant contends that footnote two of <u>Sereboff</u>, declining to consider the appropriateness of relief under § 502(a)(3) because it "contravened principles like the make-whole doctrine," allows Defendant to make the argument that application of the make-whole doctrine would be appropriate in this case because the jury's verdict or settlement fund will arrive at the exact amount necessary to make Defendant whole.  (Def. Br. 5.)  The make-whole doctrine is an equitable principle that operates as a default rule that would prohibit Plaintiff from enforcing its subrogation rights until Defendant had been fully compensated for its injuries; once Defendant is "made whole," Plaintiff could then only recover that amount Defendant received from the third-party in excess of the amount of Defendant's total loss.  <u>See</u> <u>Walker</u>, 22 F. Supp. 2d at 350.  Defendant, however, argues that allowing the Plaintiff to recover before Defendant's attorney would be unfair and would result in Plaintiff's unjust enrichment.  (Def. Br. 2.)  As such, it appears that the make-whole doctrine is not the equitable defense that would achieve what Defendant asks for; instead, it seems Defendant is requesting this Court to apply the federal common law principle of common-fund doctrine.  <u>See</u> <u>United States ex rel. Bogart v. King Pharms.</u>, 493 F.3d 323, 328-29 (3d Cir. 2007) (discussing the common-fund doctrine.)

If Defendant had not pursued its claim against the third-party, Plaintiff in this case would have no common fund from which to recover the benefits paid.  <u>See</u> <u>Bond</u>, 1997 U.S. Dist. LEXIS 6358 at *10-11  ("Plaintiffs could have avoided paying a proportion of Defendant's counsel fees by seeking a third-party recovery themselves . . . but for Defendant's pursuit of the third-party, there would have been no common fund from which Plaintiffs could have recovered.").  If Plaintiff were excused from absorbing a <u>pro-rata</u> share of the fees associated with the creation of the third-party

recovery, it would amount to Plaintiff's unjust enrichment at Defendant's expense.  See Id.  As such, while Plaintiff is clearly entitled to a "right to recover from the covered person amounts received by judgment [and] settlement," as stated within its 1995-2006 SPD, Plaintiff's recovery must be reduced by a pro-rata share for attorney's fees because the ERISA plan does not "plainly and unambiguously require[] complete reimbursement" from the Defendant for amounts received by judgment, settlement, or otherwise from a third party or its insurance carrier.  See Silcott, 1998 U.S. Dist. LEXIS 11338, at *10 (citing Ryan, 78 F.3d at 127) (emphasis added).  "[U]nless clearly precluded by contract, public policy[,] or other compelling reason, Federal common law notions of equity dictate that a party who benefits from a common fund must share in the expense of creating it." Bond, 1997 U.S. Dist. LEXIS 6358 at *11-12.   Accordingly, Plaintiff's subrogation lien on Defendant's third-party recovery is subject to a pro-rata reduction for Defendant's attorney's fees pursuant to the common-fund doctrine.

### B.  Subrogation with Regard to Decedent's Parents

Defendant contends that, regardless of this Court's decision to grant or deny Plaintiff an equitable lien on any recovery Defendant receives from the third-party action – such lien could only apply to the Estate and not to any recovery by Parents because Parents were not "Covered Persons" under the terms of the contract, were not in privity with Plaintiff, and received no benefits from Plaintiff.  (Def. Br. 7); see Bill Gray Enters. v. Gourley, 248 F.3d 206 (3d Cir. 2001).  Plaintiff asserts that its Complaint only implicates the parents of Keith Beenick in their capacities as Executor/Executrix of Defendant, the Estate of Beenick.  As in Bill Gray, "a plain reading of the Plan document does not permit the Plan to seek reimbursement from a party for whom it never expended funds under its medical coverage." 248 F.3d at 221.  As such, any recovery achieved by

Decedent's Parents separate from the Estate of Keith Beenick for their own claim of loss of companionship or other equitable relief, is not subject to an equitable lien by Plaintiff.

### C.  Attorney's Fees

Plaintiff requests attorney's fees in this case.  "Pursuant to ERISA, 'the court in its discretion may allow a reasonable attorney's fees and costs of action to either party.'"  Saket v. Avaya, Inc. Long Term Disability Plan for Salaried Emples., No. 05-5910, 2007 U.S. Dist. LEXIS 45696, at *42 (D.N.J. June 25, 2007) (quoting 29 U.S.C. § 1132(g)(1)).  The Third Circuit has outlined five factors to consider in determining whether to award fees in the ERISA context:

> (1) the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy an award of attorney's fees; (3) the deterrent effect of an award; (4) the benefit conferred upon members of the pension [or welfare] plan as a whole; and (5) the relative merits of the parties' position.

Saket, 2007 U.S. Dist. LEXIS 45696 at *42 (citing URSIC v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983)); see also Bond, 1997 U.S. Dist. LEXIS 6358 at *13.  "The factors serve merely as flexible guidelines and no one factor is determinative; nor must each one be considered."  Trucking Employees of North Jersey Welfare Fund, Inc. v. Brockway Fast Motor Freight Co., 130 F.R.D. 314, 325 (D.N.J. 1989) (citing Gray v. New England Tel. & Tel. Co., 792 F.2d 251, 258 (1st Cir. 1986)).

Plaintiff contends that the final three factors weigh in favor of granting attorney's fees to Plaintiff.  (Pl. Br. 11.)  Specifically, Plaintiff asserts: (1) that an award would deter other participants from "blatantly ignoring" subrogation provisions of Plaintiff's SPD; (2) any monies recovered under the subrogation lien will benefit all the participants of the Fund because Plaintiff is a multi-employer welfare plan and the deterrent effect further promotes this factor as the reduced litigation would benefit all participants in the Fund; and (3) since the language of the 1995-2006 subrogation

provision is "so clear and unambiguous, it is axiomatic that Defendant's positions at all relevant times have been utterly without merit." (Id. 11-12.) Defendant argues that it has shown no bad faith and, without its continued efforts, Plaintiff would never have even known there was a third-party action. (Def. Br. 10.)

Plaintiff's arguments are flawed because, as discussed herein, the 1995-2006 SPD contained ambiguous language in its subrogation provision. In effect, Plaintiff is asking for attorney's fees to deter Plan participants from litigating over an ambiguous contractual provisions that Plaintiff itself wrote. Further, any award to Plaintiff would not confer a benefit upon members of the pension or welfare plan as a whole because it would then be used to fund litigation over claims arising under the 1995-2006 SPD. See Trucking Employees, 130 F.R.D. at 325. Moreover, "traditional policy cautions against awarding attorneys' fees except in limited circumstances." Id. (citations omitted). Accordingly, Plaintiff is not entitled to attorney's fees in this case.

## V.      Defendant's Counterclaim

Defendant has filed a counterclaim alleging that Plaintiff has refused to provide information to which it was entitled under 29 U.S.C. §§ 1024(b)(4) and 1132. (Def. Ans. Counter-Claim.) Plaintiff has filed a Motion to Dismiss pursuant to Rule 12(b)(6) asserting that the Plan Administrator complied with Defendant's written request for documents, that any requests Defendant made to Aetna Insurance Company are improper as Aetna is not the Plan Administrator, and as such, Defendant has failed to state a claim upon which relief can be granted. (Def. Mot. Dismiss 1.)

Defendant concedes that he submitted his written requests for information to the Plan Administrator (Def. Cert. 2), and so Defendant's counterclaim is premature. In light of this concession, Defendant's counterclaim must be dismissed. However, this ruling does not preclude

Defendant from making a written request to the Plan Administrator in the future, and the Plan Administrator has not indicated that he would not respond to such a request.

**VI.      Conclusion**

For the foregoing reasons, the Court the grants Plaintiff's Motion for Summary Judgment insofar as declaring Plaintiff's subrogation lien is valid and enforceable, but Plaintiff is not entitled to complete recovery of benefits paid without a <u>pro-rata</u> reduction for Defendant's attorney's fees incurred in the underlying state court action.  Defendant's Motion for Summary Judgment, insofar as it seeks to invalidate Plaintiff's subrogation lien on state doctrines of public policy and make-whole doctrine is denied.

Plaintiff's request for attorney's fees is denied.

Date: December 9, 2008                                             /s/ Freda L. Wolfson
                                                                   FREDA L. WOLFSON, U.S.D.J.